UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

CHRISTOPHER WEEKS,

                              Plaintiff,

                                                            Case # 20-CV-6721-FPG

v.

                                                            DECISION AND ORDER

SGT. DAVID FILIGHERA, *et al.*,

                              Defendants.

## INTRODUCTION

Plaintiff Christopher Weeks, a former inmate at Collins Correctional Facility, commenced this civil rights action pursuant to 42 U.S.C. § 1983, alleging excessive force and failure to intervene against Sgt. David Filighera and Corrections Officers Darrin Jones, Bradley Yelen, Shawn Gentner, Scott Killingbeck, and Andrew Kielma. ECF No. 1. On April 25, 2025, after a five-day trial, the jury returned a verdict, finding that Killingbeck had used excessive force against Plaintiff. ECF No. 123. For this claim, the jury awarded $50,000 in compensatory damages and one dollar in punitive damages. *Id.* As for Plaintiff's other claims, the jury found that the Defendants were not liable. *Id.* Judgment was entered on April 29, 2025. ECF No. 126. Defendant Scott Killingbeck now moves for an order granting a remittitur or, in the alternative, a new trial pursuant to Federal Rule of Civil Procedure 59. ECF No. 127. Plaintiff opposes the motion. ECF No. 129. For the reasons that follow, Killingbeck's motion (ECF No. 127) is DENIED.

## LEGAL STANDARD

Rule 59(a) allows the Court to "grant a new trial on all or some of the issues . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a). "While it is properly within the province of the jury to calculate damages, there is an upper limit, and whether that has been surpassed is not a question of fact with

respect to which reasonable persons may differ, but a question of law." *MacMillan v. Millenium Broadway Hotel*, 873 F. Supp. 2d 546, 559 (S.D.N.Y. 2012) (internal quotations and brackets omitted). Where there is no specific error identified in the jury's award, the Second Circuit has generally "held that a jury's damage award may not be set aside as excessive unless 'the award is so high as to shock the judicial conscience and constitute a denial of justice.'" *Genovese v. Cnty. of Suffolk*, 128 F. Supp. 3d 661, 674 (E.D.N.Y. 2015) (quoting *Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 165 (2d Cir. 1998)). On the other hand, "[w]here the court has identified a specific error, . . . the court may set aside the resulting award even if its amount does not 'shock the conscience.'" *Kirsch*, 148 F.3d at 165.

## DISSCUSSION

Killingbeck argues that the Court should grant him a remittitur to $20,000 or $15,000[1] or in the alternative, a new trial for two reasons. First, he argues that an award of $50,000 in compensatory damages is excessive given the limited nature of Plaintiff's physical injury. ECF No. 127-3 at 3. Second, he argues that the jury award was influenced by improper statements made by Plaintiff's counsel and therefore, the award was based on a specific error. *Id.* at 7. The Court discusses each in turn.

### A. Nature of Plaintiff's Injury

Killingbeck's first argument is that an award of $50,000 is excessive given the very limited nature of Plaintiff's physical injury. *Id.* at 3. Specifically, he argues that an award of $50,000 in compensatory damages for a talus head fracture shocks the judicial conscience, warranting a remittitur or new trial. *Id.* at 5.

---

[1] On page 8 of Killingbeck's memorandum of law (ECF No. 127-3), he states that he requests a remittitur to $20,000; however, on that same page, he also requests a remittitur to $15,000. ECF No. 127-3 at 8.

When determining if an award shocks the judicial conscience, "courts canvass the amounts awarded in comparable cases and determine whether the award falls within the reasonable range." *Guzman v. Jay*, 303 F.R.D. 186, 197 (S.D.N.Y. 2014) (internal quotations omitted). "In determining whether a particular award is excessive, courts have reviewed awards in other cases involving similar injuries, 'bearing in mind that any given judgment depends on a unique set of facts and circumstances.'" *Scala v. Moore McCormack Lines, Inc.*, 985 F.2d 680, 684 (2d Cir. 1993) (quoting *Nairn v. Nat'l R.R. Passenger Corp.*, 837 F.2d 565, 568 (2d Cir. 1988)). "This determination is fact specific and inherently imprecise." *Ragusa v. City of New York*, 222 F. Supp. 3d 297, 301 (S.D.N.Y. 2016). Therefore, the Court's task is "not to balance the number of high and low awards and reject the verdict in the instant case if the number of lower awards is greater" but instead to "inquire whether the . . . verdict is within reasonable range." *Sinkov v. Americor, Inc.*, 419 F. App'x 86, 93 (2d Cir. 2011) (summary order) (internal quotation omitted).

Killingbeck argues that Plaintiff's fracture is a minor injury, and that he has been unable to find a case where the sole significant injury was such a fracture. ECF No. 127-3 at 5. Nevertheless, Killingbeck cites two cases and argues that the plaintiffs in those cases received far smaller awards for similar, if not more significant, injuries.[2] *Id.* at 5–6. The Court is unpersuaded by this argument because it fails to consider that Plaintiff is entitled to compensatory damages not only for his physical injury but also for emotional distress. *See Rodriguez v. Village of Port Chester*, 535 F. Supp. 3d 202, 221 (S.D.N.Y. 2021) (explaining that under 42 U.S.C. § 1983 "compensatory damages may comprise of compensation for (1) out-of-pocket losses; and (2) pain and suffering as well as emotional and mental distress").

---

[2] Due to the purported lack of similar cases, Killingbeck offers other arguments to demonstrate that the jury award in this case is excessive. ECF No. 127-3 at 7. Because these arguments do not relate to amounts awarded in comparable cases, the Court need not address them.

Because Plaintiff is entitled to compensatory damages for emotional distress, the Court must consider whether the jury award in this case falls within the reasonable range considering Plaintiff's physical as well as emotional injuries. At trial, Plaintiff testified to the emotional impact the incident had on him, testifying that he "was in a panic" during the incident at issue and that after the incident, he continued to feel unsafe at Collins Correctional Facility. ECF No. 127-1 at 51–53. He also testified that at the time of trial he "still f[elt] affected emotionally[,]" that he still gets "flashbacks of what happened sometimes[,]" and that he "think[s] about it a lot." *Id.* at 55.

In this Circuit, emotional distress awards are generally grouped into three types of claims: garden-variety, significant, and egregious. *Duarte v. St. Barnabas Hosp.*, 341 F. Supp. 3d 306, 319 (S.D.N.Y. 2018). Plaintiff's testimony as to emotional distress falls into the garden-variety category, which "is characterized by a plaintiff's testimony describing anguish in vague and conclusory terms . . . not supported by any medical corroboration." *Id.* For garden-variety emotional distress claims, courts in this Circuit generally uphold jury awards of up to $125,000 in damages. *See Lore v. City of Syracuse*, 670 F.3d 127, 177 (2d Cir. 2012). As such, the award in this case of $50,000 is well within the range of damages for the type of emotional injury Plaintiff described at trial. Therefore, even if the Court were to agree that Plaintiff's physical injury was too minor to warrant the jury's award, the Court cannot conclude that the jury's award in this case shocks the judicial conscience because it is well within the range of damages for which courts in this Circuit have found reasonable for the emotional injuries described by Plaintiff. Consequently, a remittitur or new trial is not warranted on this basis.

**B. Statements by Plaintiff's Counsel**

Killingbeck's second argument is that the jury's award was based on a specific error. ECF No. 127-3 at 7. He argues that the jury issued an award consistent with injuries far worse than what

the medical records and testimony showed in this case, and thus the logical conclusion is that the jury believed that Plaintiff's injury was far worse than it actually was. *Id.* Killingbeck further contends that the jury's award was influenced by improper statements made by Plaintiff's counsel in his closing argument. *Id.* Specifically, he maintains that Plaintiff's counsel made two improper statements during his closing. First, he argues that Plaintiff's counsel's statement that Defense counsel "should be embarrassed presenting an argument like that to you" inflamed the passions of the jury. *Id.* Second, he argues that it was improper for Plaintiff's counsel to claim that "there is a difference between how a hospital gives Motrin and Tylenol than . . . when you take the little pill or a capsule, they put you on an IV of Tylenol and Motrin." *Id.* Killingbeck argues that this claim led the jury to believe that Plaintiff's injuries were worse than they were. *Id.*

Killingbeck objected to both these statements at trial, and the Court sustained both objections. *See* ECF No. 127-2 at 288, 300. The Court also told the jury to disregard the comment that Defense counsel should be embarrassed and told Plaintiff's counsel to "stick to the proof" after his statement about the pain medications. *Id.* Additionally, the Court instructed the jurors prior to the closing argument that "nothing the attorneys say at any time is evidence." The Court also specifically instructed the jury that the statements made by each attorney during their closing arguments were not evidence.

Again, Killingbeck's argument is premised on the contention that Plaintiff's physical injury was too insignificant to warrant the jury award in this case. For the same reasons as discussed above, the Court rejects that argument because it fails to take into account Plaintiff's emotional injuries, which are compensable under 42 U.S.C. § 1983. However, even if the Court were to accept Killingbeck's argument related to Plaintiff's physical injury, it would still reject Killingbeck's argument that Plaintiff's counsel's statements warrant a remittitur or new trial.

"[A] party seeking a new trial on the basis of opposing counsel's improper statements to the jury faces a heavy burden, as rarely will an attorney's conduct so infect a trial with undue prejudice or passion as to require reversal." *Picarella v. HSBC Securities (USA) Inc.*, 724 F. App'x 22, 24 (2d Cir. 2018) (summary order) (quoting *Marcic v. Reinauer Transp. Cos.*, 397 F.3d 120, 124 (2d Cir. 2005)). A new trial is only appropriate where "the conduct of counsel. . . causes prejudice to the opposing party and unfairly influences a jury's verdict[.]" *Pappas v. Middle Earth Condo. Ass'n*, 963 F.2d 534, 540 (2d Cir. 1992). When considering statements made during a closing argument, "[i]t is well established that '[n]ot every improper or poorly supported remark made in summation irreparably taints the proceedings; only if counsel's conduct created undue prejudice or passion which played upon the sympathy of the jury, should a new trial be granted.'" *In re Vivendi Universal, S.A. Sec. Litig.*, 765 F. Supp. 2d 512, 581 (S.D.N.Y. 2011), *aff'd sub nom.*, *In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223 (2d Cir. 2016) (quoting *Marcic*, 397 F.3d at 127). Therefore, a "new trial is only warranted where the attorney's concluding argument deprived the opposite party of a fair trial." *Parrish v. Sollecito*, 280 F. Supp. 2d 145, 168 (S.D.N.Y. 2003) (internal quotation marks and citation omitted).

Considering both the statements that Killingbeck has identified and considering them in light of the trial as a whole, the Court concludes that neither of the statements raise severe enough prejudice to warrant a remittitur or new trial. The Court gave instructions indicating that the statements were not evidence, and there is no evidence that the jury ignored those instructions. *See Parrish*, 280 F. Supp. 2d at 168 ("It is a well settled rule that the jury is presumed to comply with the Court's instructions."). Therefore, the statements made by Plaintiff's counsel were not likely to have affected the jury's evaluation of the evidence. Additionally, as is the case here, a remittitur or new trial is not warranted based on improper statements by counsel when the challenged

6

statements "were subject to sustained objections and not repeated" and made during "openings and closings where counsel is given more leeway." *Johnson v. City of New York*, 593 F. Supp. 3d 58, 72 (S.D.N.Y. 2022). Consequently, a remittitur or new trial is not warranted on the basis of Plaintiff's counsel's statements.[3]

CONCLUSION

For the reasons stated, Defendant Scott Killingbeck's motion for an order granting a remittitur or, in the alternative, a new trial pursuant to Federal Rule of Civil Procedure 59 (ECF No. 127) is DENIED.

IT IS SO ORDERED.

Dated:  August 14, 2025
        Rochester, New York

_____
HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York

---

[3] Killingbeck also argues that the Court "may even find a new trial is warranted independent of remittitur based on Plaintiff's closing remarks, as well as Plaintiff misleading the jury by informing the jury on direct examination that Plaintiff was found guilty of 'possession' without permitting explication of what Plaintiff was found guilty of possessing." ECF No. 127-3 at 8. Killingbeck acknowledges that the Court permitted a corrective instruction during closing arguments, but maintains that "by that point, several days later, the notion that Plaintiff was a non-violent offender was already cemented in the jurors' minds." *Id.* It is unclear to the Court why Killingbeck believes that the notion that Plaintiff was a non-violent offender would impact the jury award in this case, and therefore, the Court cannot conclude that a remittitur or new trial is warranted on that basis.