UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

CHRISTOPHER WEEKS,

PLAINTIFF,

v.

SGT. DAVID FILIGHERA, ET AL.,

DEFENDANTS.

Case No. 6:20-cv-06721

DECLARATION OF EDWARD SIVIN IN
SUPPORT OF PLAINTIFF'S MOTION
FOR ATTORNEY'S FEES

EDWARD SIVIN, declares, pursuant to 28 USC § 1746, under penalty of perjury, as follows:

1. I am a member of Sivin, Miller & Roche LLP (hereinafter "SMR"), attorneys for Plaintiff Christopher Weeks (hereinafter "Plaintiff," or "Weeks"), in the above-named matter, and, as such, am fully familiar with the facts and circumstances in conjunction therewith. I submit this Declaration in support of Plaintiff's application for attorney's fees and reimbursement of litigation expenses pursuant to 42 U.S.C. § 1988 as against Defendant C.O. Scott Killingbeck (hereinafter "Killingbeck"), against whom Plaintiff prevailed on his cause of action pursuant to 42 U.S.C. § 1983. For the reasons stated below, and in the accompanying Memorandum of Law, SMR requests that it be awarded a fee based on an hourly rate of $525 for SMR partners Edward Sivin, Glenn Miller, and David Roche, an hourly rate of $475 for SMR's former associate, Clyde Rastetter, and appropriate hourly rates for the various legal assistants who participated in this five-year litigation. The instant request is reasonable based not only on the Lodestar method, but also on what even Defendants herein acknowledge was the extreme "undesirability" of

this case and the "results obtained," which pursuant to *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974) are two of the factors to which the Court can look in assessing a reasonable attorney's fee.

2. In connection with the instant motion, I submit the following exhibits:

**Exhibit 1**: Declaration of Gary M. Levine, Esq., dated March 15, 2023;

**Exhibit 2**: Declaration of P. Jenny Marashi, Esq., dated March 7, 2023;

**Exhibit 3**: Declaration of Andrew Laufer, Esq., dated March 8, 2023;

**Exhibit 4**: Declaration of Patrick Mantione, Esq., dated March 14, 2023;

**Exhibit 5**: Chart of similar cases commenced in the Western District of New York between March 1, 2020 and March 1, 2021;

**Exhibit 6**: November 3, 2020 letter from Acting Deputy Commissioner and Counsel for the Department of Corrections and Community Supervision ("DOCCS") denying a request for indemnification in connection with an award of compensatory and punitive damages against a correction officer in another Eighth Amendment excessive force case litigated by SMR;

**Exhibit 7**: Time records for Edward Sivin, Esq.;

**Exhibit 8**: Time records for Glenn Miller, Esq.;

**Exhibit 9**: Time records for David Roche, Esq.;

**Exhibit 10**: Time records for Clyde Rastetter, Esq.;

**Exhibit 11**: Time records for Jake Ethé;

**Exhibit 12**: Time records for Alexis Henry;

**Exhibit 13**: Time records for Jason Miller; and

**Exhibit 14**: Itemization of litigation expenses and supporting documentation.

**BACKGROUND AND EXPERIENCE OF
SIVIN, MILLER & ROCHE LLP**

3. Sivin, Miller & Roche LLP (SMR) has its offices at 20 Vesey Street, New York, NY, in the Southern District of New York, and focuses primarily on representing individuals who allege that their civil rights were violated by correction officers and police officers. The firm currently has a caseload in excess of 270 cases involving allegations of civil rights violations by correction officers and police officers in both state and federal court. Sivin & Miller, LLP was formed by attorneys Edward Sivin ("Sivin") and Glenn Miller ("Miller") in 1994. In 2020, attorney David Roche ("Roche"), a former Assistant District Attorney and then-criminal defense lawyer, joined the firm as a partner, and thereafter the firm continued under the name Sivin, Miller & Roche LLP.

4. Over the course of the previous five-to-ten years especially, SMR has become a preeminent, highly-regarded civil rights firm in the eyes of incarcerated individuals ("I/Is") who seek to bring claims in New York state and federal courts for vindication of their civil rights based on allegations of excessive force and other abuse by correction officers. Plaintiff was referred by a fellow I/I to SMR because the firm has gained special repute, and become a mainstay reference, particularly among I/Is who may struggle with mental health issues and/or possess little more than their own say-so in support of their claims and/or have sustained relatively minor physical injuries. Many of these cases are considered undesirable from a

litigator's perspective, and therefore often need to be litigated by I/Is *pro se*. Indeed, a PACER review of similar lawsuits filed in the Western District of New York in the six-month period before and after Plaintiff brought suit here—that is, cases that listed the "Cause of Action" as 42:1983(pr) (Prisoner Civil Rights) and the "Nature of Suit" as 440 (Civil Rights: Other), 550 (Prisoner: Civil Rights), 555 (Habeas Corpus (Prison Condition)), and 560 (Prisoner Petitions: Civil Detainee: Conditions of Confinement)—reveals that, out of the approximately 167 cases, as many as 154 were commenced *pro se*. *See* **Exhibit 5**. While some of these *pro se* cases may not have had merit and were dismissed quickly, and while some plaintiffs may have eventually retained counsel on a *pro bono* or similar basis, it is clear that attorneys in the Western District of New York and elsewhere are not generally agreeing to represent these I/Is on a consistent basis.

5. A healthy majority of the letters, emails, and phone calls that SMR receives from I/Is or their families seeking representation originate in the Northern and Western Districts of New York, where most of the New York State correctional facilities are located. That these out-of-district clients consistently seek SMR, whose office is located in the Southern District of New York, evinces their belief—based on SMR's track record, results, and reputation—that SMR may be more likely than other lawyers to take and prevail on cases that present difficult liability issues and/or involve relatively minor damages, but nonetheless involve civil rights violations that deserve vindication.

4

6. The four declarations submitted on behalf of SMR are from lawyers who have practiced extensively in the area of civil rights litigation. The first declaration is from Gary M. Levine, former Acting Attorney General in Charge of the Rochester office of the New York State Office of Attorney General, who has defended numerous civil rights lawsuits against New York State correction officers, including lawsuits brought by SMR and civil rights lawsuits before this Court.[1]

7. All three partners of SMR, as well as our former associate, Clyde Rastetter ("Rastetter"), participated in the litigation of this lawsuit. Miller, Rastetter, and I, together with the support of paralegals, handled most of the pre-trial proceedings, with Rastetter conducting most of the pre-trial depositions. Under my supervision, legal assistant Jake Ethé was primarily responsible for drafting and preparing papers in opposition to Defendants' two unsuccessful motions to dismiss. Roche, with the support of paralegal Alexis Henry, conducted the five-day trial of this case to a successful plaintiff's verdict, and Miller and I provided remote trial support. I handled all post-trial proceedings, including opposing Killingbeck's post-trial motion for a remittitur of the damages award and/or for a new trial, and, with the support of Ethé, the instant fee application.  The following is a summary of the background and qualifications of those who litigated this case for SMR.

---

[1] *See, e.g.*, *McFadden v. Annucci*, No. 16-CV-06105, 2021 U.S. Dist. LEXIS 174695 (W.D.N.Y. 2021); *Evans v. Bennett*, No. 15-CV-6395FPG, 2019 U.S. Dist. LEXIS 42299 (W.D.N.Y. 2019); *Washington v. Crowley*, No. 13-CV-6630-FPG 2017 U.S. Dist. LEXIS 126306 (W.D.N.Y. 2017); *Jean v. Krauss*, No. 13-CV-6255-FPG, 2015 U.S. Dist. LEXIS 11904 (W.D.N.Y. 2015).

**EDWARD SIVIN AND GLENN MILLER**

8. I was admitted to the New York and New Jersey bars in 1982, and also am admitted to and have practiced extensively in the United States District Courts for the Southern, Eastern, Northern, and Western Districts of New York and the Second Circuit Court of Appeals. I am a 1981 graduate of Rutgers-Camden Law School, where I served as an editor of the Law Review. In that capacity, I wrote and had published an article relating to civil rights in the context of child custody disputes. *See* Edward Sivin, *Residence Restrictions on Custodial Parents: Implications for the Right to Travel*, 12 Rutgers L.J. 341 (1981).

9. Over the past forty-three years, I have practiced exclusively in the area of plaintiff's litigation. In 1994, Glenn Miller and I formed Sivin & Miller, LLP, a law firm with a primary focus on cases involving allegations of correction officer and police officer misconduct. Since then, SMR has litigated several hundreds of these cases, and tried well over a hundred of them, both in state and federal court (in all four districts within the State of New York), and has also litigated these cases extensively at the state and federal appellate levels. Many of those cases have involved claims of excessive force by correction officers and police officers, including several cases that have resulted in favorable decisions by the Second Circuit Court of Appeals and the New York State Appellate Division. *See, e.g.*, *Hundley v. Frunzi*, 2024 U.S. App. LEXIS 21111 (2d Cir. 2024) (summary order) (affirming in its entirety a judgment in favor of an incarcerated individual on an Eighth Amendment excessive force and First Amendment retaliation case);

*Magalios v. Peralta*, 2023 U.S. App. LEXIS 18299 (2d Cir. 2023) (summary order) (affirming in its entirety a judgment in favor of an incarcerated individual on an Eighth Amendment excessive force case); *Tranchina v. McGrath*, 2022 U.S. App. LEXIS 33763 (2d Cir. 2022) (summary order) (affirming in its entirety a judgment in favor of an incarcerated individual on an Eighth Amendment excessive force case); *Mayanduenas v. Bigelow*, 849 F. App'x 308 (2d Cir. 2021) (summary order) (reversing district court's order *sua sponte* dismissing an excessive force lawsuit on behalf of a *pro se* incarcerated individual who was homeless and had mental health struggles and limited proficiency in English); *Ekukpe v. Santiago*, 823 F. App'x 25 (2d Cir. 2020) (summary order) (affirming in its entirety a judgment in favor of a plaintiff on false arrest and excessive force claims); *Theodat v. City of New York*, 818 F. App'x 79 (2d Cir. 2020) (summary order) (affirming in its entirety a judgment in favor of a plaintiff on a false arrest claim); *Harriger v. State of New York*, 207 A.D.3d 1045 (4th Dep't 2022) (affirming in its entirety a judgment in favor of an incarcerated individual on an excessive force claim); *Ramirez v. City of New York*, 279 A.D.2d 563 (2d Dep't 2001) (affirming in its entirety a judgment in favor of a plaintiff and against NYPD officers on an excessive force claim); *Regis v. City of New York*, 269 A.D.2d 515 (2d Dep't 2000) (affirming in its entirety a judgment in favor of a plain- tiff and against the City of New York on an excessive force claim); *Freeman v. Port Auth.*, 243 A.D.2d 409 (1st Dep't 1997) (affirming judgment in favor of a plaintiff and against Port Authority police officers on an

excessive force claim, but remitting for a new trial based, in part, on the lower court's erroneous dismissal of the plaintiff's claim for punitive damages).

10. SMR has litigated numerous other cases involving complex issues of civil rights violations that have resulted in published decisions in state and federal court at both the trial and appellate levels. These include a seminal decision by the New York State Court of Appeals—the state's highest court—regarding governmental immunity and the issue of "special duty" in the context of a request for police protection by a victim of domestic violence, *see Valdez v. City of New York,* 18 N.Y.3d 69 (2011), and at least two cases of apparent first impression. *See Alvarez v. Bause*, 2023 U.S. Dist. LEXIS 18077, at *12 (N.D.N.Y. Feb. 2, 2023) (noting that "the Court in unaware of any case law in the Second Circuit addressing the boundaries of the Right to Intimate Association for inmates," and then denying the defendants' motion to dismiss that claim on behalf of an incarcerated individual who alleged he was denied early release and association with his family based on false accusations made against him by correction officers); *Cromedy v. City of New York*, 176 A.D.3d 545 (1st Dep't 2019) (first explicit recognition by a New York State court that "[t]he denial of a fair trial claim is a stand alone cause of action" under 42 U.S.C. § 1983).[2] I am also an actively participating member of the National

---

[2] Other published decisions involving allegations of correction and police officer misconduct on which SMR prevailed at the motion and/or trial stage include, but are not limited to: *Murray v. Cty. of Albany*, 2025 U.S. Dist. LEXIS 54667 (N.D.N.Y. 2025) (Section 1983 case involving allegations of failure to protect at Albany County Correctional Facility); *Morrell v. Sgt. Glenn R. Sampson & C.O. Patrick H. Boulter*, 2024 U.S. Dist. LEXIS 172772 (N.D.N.Y. Sep. 24, 2024) (Section 1983 case involving allegations of failure to protect at Watertown Correctional Facility); *Farrington v. Poole*, 2024 U.S. Dist. LEXIS 162943 (N.D.N.Y. Sep. 10, 2024) (Section 1983 case involving allegations of excessive force at

Police Accountability Project (NPAP), an organization dedicated to addressing—through, among other things, coordinated legal action—allegations of abuse of authority by correction and police officers.

11. Glenn Miller was admitted to the New York bar in 1985 and has also been admitted to and has practiced extensively in the United States District Courts for the Southern, Eastern, Northern, and Western Districts of New York. He received his undergraduate degree from the University of Rochester and then his J.D. from Boston University School of Law in 1984. Prior to entering private practice, Miller was a supervisor of the Criminal Defense Division of the Legal Aid Society and tried dozens of homicide and other major felony cases. During his tenure at the Legal Aid Society, Miller gave weekly classes to first year Legal Aid lawyers at the Brooklyn office and citywide lectures on trial techniques to other Legal Aid lawyers and to Fordham Law School students.

12. Since entering private practice, Miller has developed a reputation as a highly skilled trial lawyer and has given lectures on trial techniques to the New York State Trial Lawyers Association and in a lecture series entitled "New York

---

Albany County Correctional Facility); *McCallion v. Marra*, 2024 U.S. Dist. LEXIS 84236 (N.D.N.Y. May 9, 2024) (Section 1983 case involving allegations of excessive force at Gouverneur Correctional Facility); *Beckwith v. City of Syracuse*, 2022 U.S. Dist. LEXIS 208385 (N.D.N.Y. Nov. 17, 2022) (Section 1983 case involving allegations against police officers of malicious prosecution and denial of right to fair trial); *McKinley v. Crevatas*, 2022 U.S. Dist. LEXIS 102838 (S.D.N.Y. June 8, 2022) (Section 1983 case involving allegations against police officers of excessive force, false arrest, and malicious prosecution); *Jones v. City of Syracuse*, 2021 U.S. Dist. LEXIS 177092 (N.D.N.Y. Sep. 17, 2021) (Section 1983 case involving allegations against police officers of denial of right to fair trial); *Williams v. City of New York*, 2021 U.S. Dist. LEXIS 177966 (E.D.N.Y. Apr. 15, 2021) (Section 1983 case involving allegations against police officers of excessive force, false arrest, and malicious prosecution).

Million Dollar Openings & Closings." Miller has obtained several multimillion-dollar verdicts and settlements in false arrest, civil rights, excessive force, and other police and correction officer misconduct cases. Miller also is a member of the Judiciary Review Committee of the Bronx County Bar Association, where he interviews, reviews, investigates, and advises on fitness for office candidates for New York State Supreme Court, Criminal Court, Civil Court, Family Court, and District Attorney.

### DAVID ROCHE

13. David Roche received his law degree from the National University of Ireland in 1992 and was admitted to the New York bar in 1996. He worked as an Assistant District Attorney in the Kings County District Attorney's office from 1996 to 2002, where he conducted numerous jury trials of homicide and other serious felony cases. After leaving the District Attorney's Office, Roche worked for approximately four years in civil litigation defense firms before setting up his own criminal defense and civil litigation practice, where he tried several dozen jury trials to verdict in state and federal court. Thereafter, Roche also acted "of counsel" to Sivin & Miller, LLP, trying to verdict several civil rights cases in state and federal court. In 2020, Roche joined Sivin & Miller, LLP as a partner, forming the current partnership Sivin, Miller & Roche LLP. In 2023, Roche taught a Continuing Legal Education (CLE) class to staff at New York Prisoner Legal Services on the subject of litigating Section 1983 prisoner-abuse cases to verdict.

10

CLYDE RASTETTER

14. Notwithstanding that he was admitted to the bar in 2021, Clyde Rastetter's experience in the area of civil rights litigation, both prior and subsequent to his bar admission, is at least comparable to that of other lawyers admitted to the bar much earlier. As an undergraduate, Rastetter attended Columbia University, where he graduated *summa cum laude* in 2015 and earned election into Phi Beta Kappa and the General Studies Honor Society. After college, he worked for two and a half years as the sole legal assistant for the New York City law firm Lansner & Kubitschek, which focused on federal civil rights cases arising out of the child welfare system, and assisted in the litigation of 42 U.S.C. § 1983 claims in the Southern and Eastern Districts of New York.

15. Rastetter then attended Benjamin N. Cardozo School of Law on a merit scholarship and graduated *magna cum laude* in 2020. While there, he earned election to the Order of the Coif, was a member of the *Cardozo Law Review*, and had a note selected for publication in 2020. *See* Clyde Rastetter, Note, *The New York Prosecutorial Conduct Commission and the Dawn of a New Era of Reform for Prosecutors*, 2020 CARDOZO L. REV. DE NOVO 55 (2020).

16. During law school, Rastetter also spent a year as a clinic intern at The Innocence Project, and also worked closely with co-founder Barry Scheck providing research and editorial assistance on his preface to the forty-eighth edition of the Georgetown Law Journal's Annual Review of Criminal Procedure. *See* Barry Scheck, *The Integrity of Our Convictions: Holding Stakeholders Accountable in an*

11

*Era of Criminal Justice Reform*, 48 GEO. L.J. ANN. REV. CRIM. PROC. (2019). Rastetter also spent a summer at the nationally recognized civil rights firm Neufeld Scheck Brustin Hoffmann & Freudenberger, LLP, working on litigation on behalf of wrongfully convicted individuals in federal courts around the country and, during his penultimate semester, he served as a full-time student law clerk for District Judge Gregory H. Woods of the Southern District of New York as part of Cardozo's Alexander Fellows program, and assisted on over a dozen matters, including by providing research and drafting assistance on numerous opinions.

17. Rastetter started his career at SMR as an associate in 2020. There, he was responsible for litigating all aspects of civil rights matters related to alleged law enforcement misconduct in New York state and federal courts, including conducting and supervising intake, drafting complaints and motions, conducting discovery and depositions, drafting appellate briefs, and appearing in court for conferences, oral arguments, and trials.

18. During his first year, while still pending admission, Rastetter was assigned to second chair an excessive force trial in the Northern District of New York. After an adverse verdict, he prepared a post-trial motion that resulted in a favorable decision overturning the verdict and ordering a new trial based on the lead defense attorney's pervasive improper and prejudicial conduct. *See Lee v. City of Troy*, 339 F.R.D. 346 (N.D.N.Y. 2021); *see also Lee v. City of Troy*, 559 F. Supp. 3d 73 (N.D.N.Y. 2021). Rastetter later spearheaded motions in the Second Circuit that resulted in the dismissal of two separate improper attempts to appeal the

12

latter of these decisions. *See* Motion Order, *Lee v. City of Troy*, No. 21-2202 (2d Cir. May 3, 2022), ECF No. 90; Motion Order, *Lee v. City of Troy*, No. 23-409 (2d Cir. May 23, 2023), ECF No. 46.

19. Rastetter second-chaired several other jury trials in state and federal courts while at SMR, conducted dozens of depositions, and was sole trial counsel in four bench trials on liability in the New York State Court of Claims. In the first of these solo trials, relating to allegations of excessive force and sexual abuse and humiliation of the claimant during a strip frisk, he successfully argued that the actions of the correction officers were undertaken within the scope of their employment and obtained a favorable decision on liability. *See M.K. v. State of New York*, 2021 WL 11549544, 2021 NY Slip Op 33901(U) (Ct Cl, Schaewe J., Oct. 27, 2021). He then handled the appeal of *M.K.* to the Appellate Division, Third Department, where he secured a precedent-setting decision affirming the State's liability for the abuse and humiliation inflicted on the claimant by correction officers during the strip frisk. *See M.K. v. State of New York*, 216 A.D.3d 139 (3d Dept 2023).

20. In July of 2023, Rastetter left SMR to start Kopke Christiana & Rastetter LLP, which also focuses on civil rights litigation, including a wide variety of cases involving misconduct by prison officials and police officers. Recently, in a Section 1983 case alleging police misconduct, Judge Magistrate Mark W. Pedersen awarded Rastetter an hourly rate of $475 in connection with an attorney's fee application. *See Howard v. City of Rochester*, 780 F. Supp. 3d 423 (W.D.N.Y. 2025).

13

**JAKE ETHÉ**

21. Jake Ethé is a paralegal at SMR who participated extensively in the litigation of this lawsuit. Ethé graduated *cum laude* from Columbia University in 2017, where he was a member of the Columbia University American Parliamentary Debate Team. Since April 2018 he has worked as a legal assistant at SMR and has assisted in litigating dozens of cases involving allegations of police and correction officer misconduct.

22. In my view, Ethé is unique among legal assistants whom I have encountered in the more than four decades I have practiced law. He is self-taught in legal research and writing and a member and valuable contributor to the listserve of the National Police Accountability Project. Despite not having attended law school, Ethé has, over his seven years with SMR, demonstrated a keen understanding of complex issues involved in civil rights litigation. As a result, I frequently collaborate with him on issues of law, and I often rely on him to do much of the preliminary legal research and writing in cases that I litigate. For example, Ethé did much of the research and writing in connection with the successful appeal in *Mayanduenas*, *supra* at ¶ 9, and helped with motion practice on a number of the cases listed *supra* at ¶ 10, n.2. Under my supervision, Ethé also was primarily responsible for drafting Plaintiff's papers in opposition to Defendants' two motions to dismiss in this case, and also assisted in the instant fee application.

**ALEXIS HENRY**

23. Alexis Henry is a paralegal at SMR who participated in the litigation of this lawsuit. Henry graduated from New York University in May 2024 with a Bachelor's degree from the Gallatin School of Individualized Study, achieving a 3.7 GPA. During her college years, she worked as a Student Global Admissions Assistant at NYU and completed internships with the Urban Democracy Lab, examining legal and social justice issues, and with WeightWatchers International, focusing on public policy initiatives at the state and federal level. Henry joined SMR as a paralegal in June 2024 and has assisted in communicating with clients and supporting attorneys with fact-based work in civil rights actions in state and federal court.

**JASON MILLER**

24. Jason Miller is a paralegal at SMR who participated in the litigation of this lawsuit. Miller graduated from the University of Delaware in June 2019 with a Bachelor of Arts in Criminal Justice and Psychology. He initially worked at SMR as a paralegal for three years, providing comprehensive litigation and trial support including client intake, FOIL requests, drafting pleadings and discovery demands, coordinating depositions, and trial preparation. After working for nearly two years at Landman Corsi Ballaine & Ford P.C. focusing on litigation support, Miller returned to SMR where he has served in a supervisory and trial support paralegal role for the past year and a half. In total, Miller has over six years of experience as a paralegal in civil rights and personal injury litigation.

15

25. The four declarations annexed hereto as **Exhibits 1, 2, 3, and** 4 were submitted on behalf of SMR in support of fee applications the firm filed in two other civil rights cases: *Stanbro v. Palou*, No. 20-CV-1591 (KMK), 2024 U.S. Dist. LEXIS 50633 (S.D.N.Y. 2024), and *Magalios v. Peralta*, No. 19-CV-6188 (CS), 2024 U.S. Dist. LEXIS 79743 (S.D.N.Y. 2024). *Stanbro* involved allegations of use of excessive force and other malfeasance by correction officers and medical providers, and resulted in a judgment awarding Plaintiff in excess of $2 million in combined compensatory and punitive damages. *See Stanbro*, 2024 U.S. Dist. LEXIS 50633, at *5. *Magalios* also involved allegations of use of excessive force and other malfeasance by correction officers, and resulted in a judgment awarding Plaintiff in excess of $1 million in combined compensatory and punitive damages prior to remittitur. *See Magalios* 2024 U.S. Dist. LEXIS 79743, at *2.

26. In connection with those two fee awards brought by SMR in the Southern District of New York, Glenn Miller and I both were awarded hourly fees of $700, *see Stanbro*, 2024 U.S. Dist. LEXIS 50633, at *9, and $650, *see Magalios*, 2024 U.S. Dist. LEXIS 79743, at *13, based in large measure on what the courts assessed to be Sivin's and Miller's level of experience and expertise in civil rights litigation. Our partner, David Roche, did not participate in litigating *Stanbro* or *Magalios*, and therefore no fee was requested or awarded for Roche in connection therewith. However, in *Tranchina v. McGrath*, No. 9:17-CV-1256, 2021 U.S. Dist. LEXIS 213271, at *5 (N.D.N.Y. 2021), a civil rights case successfully litigated by SMR in the Northern District of New York, where allowable hourly rates are

significantly less than those allowed in the Southern District, the Court awarded Edward Sivin, Glenn Miller, and David Roche $350 per hour, which at the time was commensurate with the highest hourly rate awarded to civil rights practitioners in the Northern District.

27. In a fee application filed last year in this district before Judge Charles J. Siragusa, *see Hundley v. Frunzi*, No. 20-CV-6150 (CJS)(MWP), 2025 U.S. Dist. LEXIS 1899 (W.D.N.Y. 2025) at ECF No. 79, SMR requested a more modest hourly rate of $400 for attorneys Edward Sivin, Glenn Miller, and David Roche. In his decision, Judge Siragusa granted the request for a $400 hourly rate, and noted that approved hourly rates in the Western District for lawyers with experience comparable to Edward Sivin, Glenn Miller, and David Roche, each of whom, in the court's words, "is a very experienced trial attorney," actually range between $400 and $500. *Id.*, at *11.

28. SMR has had only one occasion to make a fee application to this Court. In *Malik v. Hable*, No. 09-CV-6283-FPG, 2017 U.S. Dist. LEXIS 161150 (W.D.N.Y. 2017) (Geraci, J.), Glenn Miller and I represented an incarcerated individual who alleged that correction officers used excessive force against him in violation of his Eighth Amendment rights. After a four-day trial, the jury awarded the plaintiff $400,000 in combined compensatory and punitive damages. Ruling on S&M's fee application, this Court noted that, because the lawsiut was commenced while the plaintiff was still incarcerated, "the Prison Litigation Reform Act ('PLRA'), 42 U.S.C. § 1997e, significantly limit[ed] the attorney fee award," since, "[u]nder

17

Section 1997e(d)(3), an award covered by the PLRA may not be based on an hourly rate greater than 150 percent of the hourly rate established for counsel appointed under the Criminal Justice Act," and because "Section 1997e(d)(2) limits the amount the defendant must pay in attorney fees to a maximum of 150% of the judgment. *See id.*, at *2-3 (internal quotation marks and citations omitted). This Court nevertheless awarded Edward Sivin and Glenn Miller the maximum amount allowable at the time under the PLRA, characterizing the defendants' argument that S&M deserved lower than the maximum rate allowable as "easily reject[ed]," and noted parenthetically that "in fact, if not limited by the PLRA, the reasonable rate [of $200 per hour] would be higher for the attorneys involved in this case." *Id.*, at *5.

## THE COURSE OF THE LITIGATION

29. On May 14, 2020, shortly after his release from prison after serving a five-year sentence for criminal possession of a weapon, Plaintiff contacted our office seeking representation in connection with a claim that he was subjected to two incidents of excessive force by correction officers at Collins Correctional Facility. The first incident occurred on April 13, 2019, and the second occurred on April 15, 2019.

30. From the outset, it was apparent that prevailing on either of Plaintiff's claims would present significant challenges. With respect to the April 13 incident, Plaintiff acknowledged that he could not identify any of the officers who participated in the use of force, and was able only to identify one supervisor who was

18

present and therefore arguably could be found liable for failure to intervene to present and/or stop that use of force.  Plaintiff further acknowledged that he had an extensive, documented history of mental illness, and that during the incidents in question he had not taken his prescribed psychotropic medications. Moreover, the limited records from the New York Department of Corrections and Community Supervision (DOCCS) that Plaintiff was able to provide to us during our subsequent in-person meeting documented claims by the involved correction officers that both use-of-force incidents were provoked by Plaintiff's disregard of direct orders, and involved relatively benign acts of force undertaken to secure Plaintiff's compliance with those orders. Finally, the injuries alleged by Plaintiff as a result of the April 13 incident arguably were *de minimis* in nature, and the injuries sustained in the April 15 incident were primarily limited to a nondisplaced ankle fracture which had since fully healed, leaving Plaintiff with minimal physical sequelae.

31. Nevertheless, SMR found Plaintiff to be credible when he recounted what in his view were gratuitous and malicious uses of excessive force by the correction officers, and the adverse emotional impact that the April 15 use-of-force incident, in particular, had on him.  Accordingly, rather than rejecting out of hand what by most objective analyses would appear to be a difficult, if not impossible, case on which to prevail, SMR agreed to investigate Plaintiff's claims further. Through Freedom of Information Law requests, SMR then obtained hundreds of pages of records from DOCCS, as well as videotapes that depicted partial aspects

19

of the incidents, audio recordings of Tier Hearings conducted in connection with the incidents, and medical and mental health records of Plaintiff. Those records confirmed not only Plaintiff's long-standing history of mental illness, but also a very extensive disciplinary history while in DOCCS custody, including approximately thirty-five other Misbehavior Reports, many involving claims of violent conduct, disobedience of direct orders, and creating disturbances. However, the records, particularly the videotapes, also indicated that Plaintiff's claim that he was subjected to a gratuitous, malicious use of force on April 15 was, if not easy to prove, credible and deserving of vindication. Accordingly, on September 16, 2020, SMR commenced suit on behalf of Plaintiff in connection with the incidents of April 13 and April 15, 2019.[3] *See* ECF. No. 1. What followed were nearly five years of hard-fought litigation, during which Defendants never made an offer of settlement pursuant to Fed. R. Civ. P. 68.

32. Pre-trial proceedings in this case were fairly extensive, and included serving and responding to multiple discovery demands, successfully moving to compel Defendants' compliance with some of those demands, *see* ECF No. 26, defending Plaintiff's deposition, and conducting the depositions of all seven

---

[3] The records that we were able to obtain at that point still did not identify any of the officers directly involved in the April 13, 2019 incident, but documented only that Sgt. David Filighera was present during at least part of the incident. Nevertheless, a claim with respect to the April 13 incident was included in the complaint in the hope that pre-trial discovery would reveal the identities of some or all of the involved officers. When that did not pan out, and the evidence fell short of demonstrating the necessary personal involvement in any constitutional violation by Filighera in the April 13 incident, our office voluntarily agreed to discontinue Plaintiff's claim with respect to that incident, and a stipulation and order was entered to that effect on November 7, 2022. *See* ECF No. 53.

correction officials named as defendants herein. Further, Plaintiff's difficulties in adjusting to life after his release from prison presented significant challenges for SMR in the litigation of this lawsuit. Specifically, there were periods of time when SMR was unable to make contact with Plaintiff, and Plaintiff also was arrested and jailed in out-of-state facilities on at least two occasions after his release from DOCCS custody. Due to Plaintiff's absences and out-of-state incarcerations, the trial of this case was scheduled, and then had to be postponed, three times over the course of nearly four years until Plaintiff finally was able to be produced for trial on April 21, 2025 pursuant to a Writ of Habeas Corpus ad Testificandum issued by this Court. In the interim, however, SMH had to oppose two extensive and well-briefed motions by Defendants to dismiss Plaintiff's lawsuit for failure to prosecute.[4] SMR also drafted pre-trial submissions, including exhibits lists, proposed undisputed facts, proposed jury instructions, voir dire informations, and motions in limine, and then had to revisit and revise those pre-trial submissions several times in preparation for the four scheduled trial dates (09/12/22, 06/23/23, 06/24/22, and 04/21/25), three of which had to be adjourned due to Plaintiff's unavailability.

33. The particular challenges confronted by SMR in litigating this lawsuit on behalf of a formerly incarcerated client are not an anomaly in SMR's niche practice. Indeed, due to substance abuse, mental health issues, homelessness,

---

[4] In the decision denying Defendants' first motion to dismiss for failure to prosecute, this Court characterized Defendants' request as a "close call." *Weeks v. Filighera*, No. 20-CV-6721-FPG, 2023 U.S. Dist. LEXIS 169502, at *19 (W.D.N.Y. 2023).

and other difficulties adjusting to life "on the outside," many of SMR's clients over the years have been unable and/or unwilling to persevere through years of litigation. Indeed, in just the past two weeks SMR was scheduled to begin two other trials involving allegations of abuse against formerly incarcerated individuals by DOCCS officers, only to have the clients not appear for their own trials.

34. On September 8, 2025, SMR was scheduled to begin trial in the Northern District of New York in *Morrell v. Sampson, et al.*, 9:22-cv-00713, another case alleging prisoner abuse by DOCCS employees in violation of the Eighth Amendment. After litigating this case for three years, successfully opposing the defendants' motion for summary judgment, fully gearing up for trial (which included, among other things, booking hotel reservations for our staff and client and travelling to Albany for the scheduled trial), SMR lost all contact with Plaintiff the day before the scheduled trial and had to appear in court on the morning of September 8 without a client. Noting that the scheduled trial had already been adjourned due to personal issues that caused Plaintiff to be unavailable, Judge Anne M. Nardacci issued an Order to Show Cause "why this case should not be dismissed for failure to prosecute...."[5]

35. Five days earlier, on September 3, 2025, SMR was scheduled to begin a virtual trial in the Court of Claims of the State of New York in *Marchese v. State of New York*, Claim No. 135091, another case involving allegations of prisoner abuse by DOCCS employees. The trial of this matter previously had been

---

5 To date, SMR still has not been able to make contact with the client in *Morrell*.

adjourned from June 10, 2025 after SMR was unable to make contact with its client. In adjourning the June 10 trial, Judge Zainab A. Chaudhry stated that "absent extraordinary circumstances, no further adjournments will be granted." *See id.*, NYSCEF Doc. No. 19. On September 3, SMR's client once again failed to appear for the trial.[6]

36. In any event, despite his being detained in an out-of-state jail on criminal charges, SMR finally was able to secure the attendance of Christopher Weeks, and beginning on April 21, 2025, a five-day trial was held with respect to Plaintiff's claim that, six years earlier (on April 15, 2019), he was subjected to a use of excessive force at Collins Correctional Facility. Adding to the usual difficulty in persuading a jury to find in favor of a plaintiff who, at the time of the incident, had been incarcerated on a felony charge, the jury in this case was also aware that Plaintiff once again was in law-enforcement custody during the trial. Nevertheless, and despite the absence of any non-party witnesses who could corroborate Plaintiff's claims and refute the claims of the six correction officials who testified at trial, the jury unanimously found that Plaintiff was subjected to excessive force by Defendant C.O. Scott Killingbeck, and awarded Plaintiff $50,000 in compensatory damages and $1,000 in punitive damages.

37. Still, SMR's job was not complete. Instead of paying any portion of the judgment that resulted from the jury's verdict, *see* ECF. No. 126, on May 21, 2025

---

[6] Instead of dismissing the claim, Judge Chaudhry allowed SMR to call its other witnesses and adjourned the proceedings to October 31, 2025 to give SMR a final chance to secure the claimant's attendance. To date, SMR still has not been able to make contact with the client in *Marchese.*

Killingbeck filed a motion for a remittitur of the damages award and/or for a new trial. ECF. No. 127. In support of that motion, defense counsel essentially argued, *inter alia*, that but for the fee shifting provisions of 42 U.S.C. §1988, no lawyer in his right mind would have gone to the time and expense of litigating this type of case, much less trying the case to verdict. "A nondisplaced, noncomminuted fracture of the talus is such a minor injury that it is essentially unheard-of to go through the expense of a jury trial to resolve it. If not for the fee-shifting statute in § 1983 cases, it is extremely unlikely any attorney would have taken up a case like this one in the first place." ECF 127-3 at 5. On August 14, 2025, this Court denied Killengbeck's post-trial motion in its entirety. *See* ECF No. 130.

38. Finally, to date neither Defendant nor the State of New York has paid, nor even committed to paying, any portion of the judgment entered in favor of Plaintiff. Moreover, given that the jury found in favor of Plaintiff and against Killingbeck on Plaintiff's Eighth Amendment claim, which necessarily means that the jury found Killingbeck's actions to be "sadistic and malicious," and given that the jury also found that Killingbeck's actions were sufficiently egregious to justify an award of punitive damages, it is far from clear that the State of New York will ultimately pay any portion of the judgment entered against Killingbeck. Indeed, in another lawsuit brought by SMR alleging a use of excessive force by a DOCCS correction officer, SMR secured a successful jury verdict awarding the plaintiff $240,000 in damages, then defended that verdict successfully to the Second Circuit, *see Tranchina v. McGrath*, No. 21-2985-cv, 2022 U.S. App. LEXIS 33763 (2d

Cir. 2022), only to then be informed that the State of New York would not indemnify the officer for any portion of the judgment entered against him. *See* **Exhibit 6** (November 3, 2020 letter from Acting Deputy Commissioner and Counsel for DOCCS denying defendants' request for indemnification). To date, neither SMR nor the plaintiff in *Tranchina* has recovered any portion of the judgment entered in Tranchina's favor, or the attorney's fee awarded to SMR. In yet another case involving police officer misconduct in which SMR obtained a plaintiff's verdict, the Second Circuit Court of Appeals denied the motion of the defendant police officer to compel the municipality to indemnify him for a judgment awarding the plaintiff compensatory and punitive damages based on the "intentional wrongdoing or recklessness" of the officer. *See Ekukpe v. Santiago*, 823 F. App'x 25 (2d Cir. 2020).

### TIME RECORDS AND LITIGATION EXPENSES

#### TIME RECORDS

39. It is the office policy of SMR, and a requirement of all lawyers and support staff at the firm, that contemporaneous time records be kept in connection with all work performed on civil rights cases. Those contemporaneous records have been compiled and submitted herewith collectively as **Exhibits 7-13**.[7]

40. As documented in those records, I spent a minimum of 72.2 hours in the prosecution of this lawsuit, including 15.8 hours in connection with the instant fee application. *See* **Exhibit 7** ("Sivin Time Records"). Glenn Miller spent a minimum

---

[7] The formats of the time records vary from person to person, owing primarily to each person's relative familiarity with computer technology. SMR has yet to implement a firm-wide system for tracking time spent on litigating its cases.

of 31.1 hours in the prosecution of this lawsuit. *See* **Exhibit 8** ("Miller Time Records"). David Roche, who tried the case to a verdict in favor of Plaintiff, spent a minimum of 207.9 hours in the prosecution of this lawsuit, including 16.5 hours of travel time. *See* **Exhibit 9** ("Roche Time Records."). Clyde Rastetter spent a minimum of 113.22 hours in the prosecution of this lawsuit. *See* **Exhibit 10** ("Rastetter Time Records"). Jake Ethé spent a minimum of 56.51 hours in the prosecution of this lawsuit, including 7.61 hours in connection with the instant fee application. *See* **Exhibit 11** ("Ethé Time Records"). Alexis Henry spent a minimum of 50.8 hours in the prosecution of this lawsuit, including 14 hours of travel time. *See* **Exhibit 12** ("Henry Time Records"). Jason Miller spent a minimum of 9.8 hours in the prosecution of this lawsuit. *See* **Exhibit 13** ("Jason Miller Time Records").

41. Based on these documented hours, and for the reasons further set forth in the accompanying Memorandum of Law, Plaintiff seeks an attorney's fee of $228,077.50, calculated as follows:

| ATTORNEY/PARALEGAL | HOURS | RATE | TOTAL |
|---|---|---|---|
| Edward Sivin | 72.2 | $525.00 | $37,905.00 |
| Glenn Miller | 31.1 | $525.00 | $16,327.50 |
| David Roche | 191.4 | $525.00 | $100,485.00 |
| Clyde Rastetter | 113.22 | $475.00 | $53,779.50 |
| Jake Ethé | 56.51 | $175.00 | $9,889.25 |
| Alexis Henry | 36.8 | $100.00 | $3,680.00 |
| Jason Miller | 9.8 | $100.00 | $980.00 |
|  |  |  |  |
| ATTORNEY/PARALEGAL | TRAVEL HOURS | RATE | TOTAL |
| David Roche | 16.5 | $262.50 | $4,331.25 |
| Alexis Henry | 14 | $50.00 | $700.00 |
|  |  |  |  |
| TOTAL |  |  | $228,077.50 |

**LITIGATION EXPENSES**

42. Annexed as **Exhibit 14** is an itemized list entitled "Litigation Expenses," with supporting documentation. The aforementioned records are maintained in the ordinary course of the business of SMR, and all of the itemized expenses have been incurred and paid by SMR in connection with this litigation. Litigation expenses for which SMR has thus far been able to obtain documentation, and for which SMR therefore seeks reimbursement, total $7,411.

43. Based on the foregoing, it is respectfully requested that the within motion be granted, and that pursuant to 42 U.S.C. § 1988, the Court award attorneys' fees in the amount of $228,077.50 and reimbursement of litigation expenses in the amount of $7,411.

Dated: New York, New York
        September 11, 2025

*s/ Edward Sivin*
Edward Sivin
Sivin, Miller & Roche LLP
Attorneys for Plaintiff
20 Vesey Street, Suite 1400
New York, NY 10007
Telephone: (212) 349-0300
E-mail: esivin@sivinandmiller.com

27