# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NEW YORK

CHRISTOPHER WEEKS,

        PLAINTIFF,

    v.

SGT. DAVID FILIGHERA, ET AL.,

        DEFENDANTS.

Case No. 6:20-cv-06721

# MEMORANDUM OF LAW IN SUPPORT OF
# PLAINTIFF'S MOTION FOR ATTORNEY'S FEES

**Sivin, Miller & Roche LLP**
Attorneys for Plaintiff
20 Vesey Street, Suite 1400
New York, NY 10007
(212) 349-0300

# TABLE OF CONTENTS

Table of Authorities.................................................................................. ii

Preliminary Statement ...............................................................................1

Statement of Facts ....................................................................................1

Argument...................................................................................................2

    I.    As The Prevailing Party, Plaintiff Is Entitled To Recover Attorney's Fees...................................................................................2

    II.    The Lodestar Approach.........................................................5

    III.    Application Of The *Johnson* Factors ..............................................10

      A. Undesirability .......................................................................11

      B. The Amount Involved in the Case and the Results Obtained ...........16

    IV.    Summary of Hours Requested.............................................16

    V.    The Court Should Award SMR Its Full Litigation Expenses............17

Conclusion...............................................................................................18

i

# TABLE OF AUTHORITIES

**CASES**                                                                                 **PAGE(S)**

*Aston v. Secretary of Health and Human Services,*
  808 F.2d 9 (2d Cir. 1986) ..........................................................................18

*Barbour v. City of White Plains,*
  788 F. Supp. 2d 216 (S.D.N.Y. 2011) ........................................................8

*Baskerville v. Mulvaney,*
  411 F.3d 45 (2d Cir. 2005)........................................................................13

*Blum v. Stenson,*
  465 U.S. 886 (1984).....................................................................................4

*Brady v. Wal-Mart Stores, Inc.,*
  455 F. Supp. 2d 157 (E.D.N.Y. 2006) ........................................................8

*Brown v. Stone,*
  66 F. Supp. 2d 412 (E.D.N.Y. 1999) ........................................................14

*Capax Discovery, Inc. v. AEP RSD Investors, LLC,*
  2023 U.S. Dist. LEXIS 4403 (W.D.N.Y. 2023) ..........................................7

*Christiansburg Garment Co. v. EEOC,*
  434 U.S. 412, 416 (1978) ............................................................................3

*Critchlow v. First Unum Life Ins. Co. of Am.,*
  377 F. Supp. 2d 337 (W.D.N.Y. 2005) ......................................................16

*Davis v. Shah,*
  2017 U.S. Dist. LEXIS 96528 (W.D.N.Y. 2017) .........................................4

*Deferio v. City of Syracuse,*
  2018 U.S. Dist. LEXIS 103596 (N.D.N.Y. 2018) ......................................17

*E.S. v. Katonah-Lewisboro Sch. Dist.,*
  796 F. Supp. 2d 421 (S.D.N.Y. 2011) ........................................................8

*Ekupke v. City of New York,*
  2017 U.S. Dist. LEXIS 210528 (S.D.N.Y., 2017),
  *aff'd* 823 F. App'x 25 (2d Cir. 2020)........................................................14

*Fox v. Vice,*
  563 U.S. 826 (2011).....................................................................................3

*Gierlinger v. Gleason,*
 160 F.3d 858 (2d Cir. 1998)...............................................................................4

*Gortat v. Capala Bros., Inc.,*
 621 F. App'x 19 (2d Cir. 2015) ..........................................................................4

*Gulino v. Bd. of Educ. of the City Sch. Dist.,*
 2024 U.S. Dist. LEXIS 105704 (S.D.N.Y. 2024)...................................4, 6, 8

*Harty v. Par Builders, Inc.,*
 2016 U.S. Dist. LEXIS 18520 (S.D.N.Y. 2016) ..............................................7

*Howard v. City of Rochester,*
 2025 U.S. Dist. LEXIS 82303 (W.D.N.Y. 2025) .............................................6

*Hundley v. Frunzi,*
 2025 U.S. Dist. LEXIS 1899 (W.D.N.Y. 2025) ..............................................6

*Johnson v. Georgia Highway Express*, Inc.,
 488 F.2d 714 (5th Cir. 1974) ..................................................................passim

*Kuzma v. Internal Revenue Serv.,*
 821 F.2d 930 (2d Cir. 1987)............................................................................17

*LeBlanc-Sternberg v. Fletcher,*
 143 F.3d 748 (2d Cir. 1998)............................................................................17

*Lochren v. Cnty. of Suffolk,*
 344 Fed. App'x 706 (2d Cir. 2009) .................................................................11

*Magalios v. Peralta,*
 2024 U.S. Dist. LEXIS 79743 (S.D.N.Y. 2024).......................................4, 14

*Midwest Ath. & Sports All. LLC v. Xerox Corp.,*
 2025 U.S. Dist. LEXIS 117671 (W.D.N.Y. 2025) ..........................................7

*Missouri v. Jenkins,*
 491 U.S. 274 (1989).........................................................................................10

*Montanez v. City of Syracuse,*
 2020 U.S. Dist. LEXIS 157224 (N.D.N.Y. 2020)..........................................16

*NAACP v. Button,*
 317 U.S. 415 (1963)...........................................................................................3

*New York v. Grand River, Enters. Six Nations, Ltd.,*
 2021 U.S. Dist. LEXIS 206532 (W.D.N.Y. 2021) ...........................................7

iii

*Newman v. Piggie Park Enterprises, Inc.*,
　390 U.S. 400, 402 (1968) ...............................................................................3

*Ortiz v. Stambach*,
　657 F. Supp. 3d 243 (W.D.N.Y. 2023) .........................................................5

*Parks v. Saltsman*,
　2024 U.S. Dist. LEXIS 183959 (W.D.N.Y. 2024) (Geraci, J.) ...................15

*Pastre v. Weber*,
　800 F. Supp. 1120 (S.D.N.Y. 1991).............................................................2

*Paulino v. Upper West Side Parking Garage, Inc.*,
　1999 U.S. Dist. LEXIS 7544 (S.D.N.Y. 1999 ...............................................8

*Perdue v. Kenny*,
　559 U.S. 542 (2010)......................................................................................4

*Rachel B. v. Comm'r of Soc. Sec.*,
　2025 U.S. Dist. LEXIS 80318 (W.D.N.Y. 2025) ........................................14

*Raishevich v. Foster*,
　247 F.3d 337 (2d Cir. 2001)..........................................................................3

*Riverside v. Rivera*,
　477 U.S. 561 (1986)......................................................................................3

*Small v. N.Y. State Dep't of Corr. & Cmty. Supervision*,
　2019 U.S. Dist. LEXIS 64132 (W.D.N.Y. 2019) ..........................................5

*Spring v. Allegany-Limestone Cent. Sch. Dist.*,
　2024 U.S. Dist. LEXIS 103832 (W.D.N.Y. 2024) ......................................10

*Stanbro v. Palou*,
　2024 U.S. Dist. LEXIS 50633 (S.D.N.Y. 2024)......................................4, 14

*Tranchina v. McGrath*,
　2022 U.S. App. LEXIS 33763 (2d Cir. 2022) .............................................13

*United States Football League v. National Football League*,
　887 F.2d 408 (2d Cir. 1989), *cert. denied,* 493 U.S. 1071 (1990) ...............2

*Venegas v. Mitchell,*
　495 U.S. 82 (1990)........................................................................................3

*Warr v. Liberatore*,
　2022 U.S. Dist. LEXIS 60549 (W.D.N.Y. 2022) ..........................................5

*Weyant v. Okst,*
 198 F.3d 311 (2d Cir. 1999) ............................................................................17

*Williams v. Marinelli,*
 987 F.3d 188 (2d Cir. 2021).............................................................................14

*Xerox Corp. v. Conduit Glob., Inc.,*
 2024 U.S. Dist. LEXIS 132596 (W.D.N.Y. 2024) ....................................6, 7

**STATUTES**

42 U.S.C. § 1983 ................................................................................................1, 2

42 U.S.C. § 1988 ........................................................................................ passim

**OTHER AUTHORITIES**

CPI Inflation Calculator,
 U.S. Dep't Lab., Bureau Lab. Stat.,
 http://www.bls.gov/data/inflation_calculator.htm (last visited September 9,
 2025) ...................................................................................................................7

## PRELIMINARY STATEMENT

Plaintiff, Christopher Weeks (hereinafter "Plaintiff," or "Weeks"), moves pursuant to 42 U.S.C. § 1988 for an award of attorney's fees against Defendant Sgt. Scott Killingbeck (hereinafter "Defendant" or "Killingbeck"), in the amount of $228,077.50, and reimbursement of litigation expenses in the amount of $7,411. The fee request is based on an hourly rate of $525 for work performed by partners Edward Sivin, Glenn Miller, and David Roche, an hourly rate of $475 for work performed by associate attorney Clyde Rastetter, and appropriate hourly rates for work performed by paralegals Jake Ethé, Alexis Henry, and Jason Miller.

The instant motion should be granted since Plaintiff, as the prevailing party in a claim pursuant to 42 U.S.C. § 1983, is entitled to such an award pursuant to 42 U.S.C. § 1988. Additionally, the time expended and expenses incurred by Sivin, Miller & Roche LLP (hereinafter "SMR") were necessary and reasonable in the prosecution of this lawsuit, and Plaintiff's fee request is reasonable given the background and experience of SMR, as well as the "undesirability" of the case and the results obtained, which are two of the *Johnson* factors that the Court can consider in assessing a reasonable attorney's fee.

## STATEMENT OF FACTS

Plaintiff assumes the Court's familiarity with the incidents that underly this lawsuit and with the ensuing litigation, as the Court supervised the pre-trial litigation, presided over the trial of this matter, and ruled on Defendant's post-trial motion for a remittitur and/or new trial. However, for a fuller explanation of

the nature and course of this litigation, the challenges confronted by SMR in bringing this lawsuit to a successful conclusion, and the background and experience of the lawyers and support staff involved therewith, Plaintiff respectfully refers the Court to the September 11, 2025 Declaration of Edward Sivin (hereinafter "Sivin Declaration"), and the exhibits annexed thereto. Included among those exhibits are declarations from four lawyers, one of whom is a former Acting Attorney General in Charge of the Rochester office of the New York State Office of Attorney General who has defended numerous civil rights lawsuits against New York State correction officers, including civil rights lawsuits brought by SMR and civil rights lawsuits before this Court; two of whom are experienced plaintiff's civil rights lawyers; and another who is a former supervisor in the office of the New York City Corporation Counsel.

## ARGUMENT

### I. AS THE PREVAILING PARTY, PLAINTIFF IS ENTITLED TO RECOVER ATTORNEY'S FEES

A prevailing party in a lawsuit brought pursuant to 42 U.S.C. § 1983 is entitled to an award of a "reasonable attorney's fee" from the defendant. *See* 42 U.S.C. § 1988(b). The award authorized under § 1988 also includes reimbursement of "those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." *United States Football League v. National Football League*, 887 F.2d 408, 416 (2d Cir. 1989), *cert. denied,* 493 U.S. 1071 (1990); *see Pastre v. Weber*, 800 F. Supp. 1120, 1127 (S.D.N.Y. 1991).

The fee-shifting provision of § 1988 is designed to facilitate the vindication of federal civil rights, something that the U.S. Supreme Court has noted is a congressional priority:

> When a plaintiff succeeds in remedying a civil rights violation, we have stated, he serves "as a 'private attorney general,' vindicating a policy t hat Congress considered of the highest priority." *Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400, 402, 88 S. Ct. 964, 19 L. Ed. 2d 1263 (1968) (per curiam). He therefore "should ordinarily recover an attorney's fee" from the defendant–the party whose misconduct created the need for legal action. *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 416, 98 S. Ct. 694, 54 L. Ed. 2d 648 (1978) (internal quotation marks omitted). Fee shifting in such a case at once reimburses a plaintiff for "what it cos[t] [him] to vindicate [civil] rights," *Riverside v. Rivera*, 477 U.S. 561, 577-578, 106 S. Ct. 2686, 91 L. Ed. 2d 466 (1986) (internal quotation marks omitted), and holds to account "a violator of federal law," *Christiansburg*, 434 U.S., at 418, 98 S. Ct. 694, 54 L. Ed. 2d 648.

*Fox v. Vice*, 563 U.S. 826, 833 (2011). Section 1988 provides an incentive for lawyers to take on meritorious civil rights cases that are otherwise considered difficult and occasionally "undesirable" from an economic and social standpoint. *See Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 719 (5th Cir. 1974) (citing *NAACP v. Button*, 317 U.S. 415 (1963)). Accordingly, attorney's fees are awarded to the successful party even though the lawyer was retained on a contingent fee basis. *See Venegas v. Mitchell,* 495 U.S. 82 (1990). Although § 1988 allows the court discretion in choosing whether to award attorney's fees to the prevailing party, "this discretion is narrowed by a presumption that successful civil rights litigants should ordinarily recover attorney's fees unless special circumstances would render an award unjust." *Raishevich v. Foster*, 247 F.3d 337, 344 (2d Cir. 2001).

3

In determining the amount of the attorney's fees to be awarded, the U.S. Supreme Court has endorsed the "lodestar" approach, which multiplies a reasonable hourly rate by the reasonable number of hours required by the case to create a "presumptively reasonable fee." *See Perdue v. Kenny*, 559 U.S. 542, 552 (2010). To ascertain a "reasonable hourly rate," the courts look to the market rates "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Gierlinger v. Gleason*, 160 F.3d 858, 882 (2d Cir. 1998). "A rate determined in this way is normally deemed to be reasonable, and is referred to–for convenience–as the prevailing market rate." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). Citing with approval decisions awarding attorney's fees to SMR, the court in *Gulino v. Bd. of Educ. of the City Sch. Dist.*, 2024 U.S. Dist. LEXIS 105704 (S.D.N.Y. 2024) emphasized "the need to avoid unfairly anchoring compensation" by referring to the "upper bounds of reasonable rates" without also "revising those rates over time, as courts consistently recognize they should." *Id.*, at *57 (citing *Stanbro v. Palou*, 2024 U.S. Dist. LEXIS 50633, at *8 (S.D.N.Y. 2024) (awarding Sivin and Miller $700 per hour); *Magalios v. Peralta*, 2024 U.S. Dist. LEXIS 79743, at *5-6 (S.D.N.Y. 2024) (awarding Sivin and Miller $650 per hour).

"In setting the reasonable hourly rate, courts should bear in mind case-specific variables that [the Second Circuit] and other courts have identified as relevant to the reasonableness of attorney's fees. These include, among others, the *Johnson* factors." *Davis v. Shah*, 2017 U.S. Dist. LEXIS 96528, at *8 (W.D.N.Y. 2017) (citing *Gortat v. Capala Bros., Inc.*, 621 F. App'x 19, 22 (2d Cir. 2015))

4

(citations and internal quotation marks omitted). The twelve *Johnson* factors are as follows:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.*, at *8-9 (citations omitted).

## II. THE LODESTAR APPROACH

Utilizing the lodestar approach, courts within the Western District of New York have routinely looked to fee awards in other cases to determine what would be a reasonable hourly rate for lawyers with skill and experience comparable to the lawyers making the fee application. *See, e.g.*, *Small v. N.Y. State Dep't of Corr. & Cmty. Supervision*, 2019 U.S. Dist. LEXIS 64132, at *44-45 (W.D.N.Y. 2019) (collecting cases assessing attorney fee rates approved in the Western District in civil rights actions); *accord Ortiz v. Stambach*, 657 F. Supp. 3d 243, 267 (W.D.N.Y. 2023) (same) (citing *Warr v. Liberatore*, 2022 U.S. Dist. LEXIS 60549 (W.D.N.Y. 2022) (collecting cases)).

A survey of civil rights fee decisions issued in the Western District over the past years supports Plaintiff's requested hourly rate of $525 for Edward Sivin, Glenn Miller, and David Roche. This is in keeping with "the need to avoid unfairly

5

anchoring compensation" by allowing the Court to maintain an "upper bounds of reasonable rates" while also "revising those rates over time, as courts consistently recognize they should." *Gulino*, 2024 U.S. Dist. LEXIS 105704, at *57.

Recent decisions in the Western District of New York demonstrate that hourly rates between $400 and close to $600 are reasonable for experienced civil rights attorneys. Most significantly, in a fee application filed by SMR in this district before Judge Charles J. Siragusa, *see Hundley v. Frunzi*, 2025 U.S. Dist. LEXIS 1899, at *11 (W.D.N.Y. 2025), the Court granted SMR's modest request for a $400 hourly rate for attorneys Edward Sivin, Glenn Miller, and David Roche, explicitly finding that approved hourly rates in the Western District for lawyers with experience comparable to SMR's attorneys, each of whom the court characterized as "a very experienced trial attorney," actually "range between $400 and $500." *Id.*

This finding is consistent with other recent decisions in this District. In *Howard v. City of Rochester*, 2025 U.S. Dist. LEXIS 82303, at *14 (W.D.N.Y. 2025), Magistrate Judge Pedersen awarded former SMR associate Clyde Rastetter an hourly rate of $475. The Court in *Howard* acknowledged that "recent decisions of this District have awarded $350 per hour to experienced civil rights litigators," and noted that rates up to $500 have been approved for experienced attorneys. *Id.*, at *13-14.

Additional support for rates in the $400-600 range comes from *Xerox Corp. v. Conduit Glob., Inc.*, 2024 U.S. Dist. LEXIS 132596, at *37 (W.D.N.Y. 2024),

6

where the Court awarded a $560 hourly rate[1] for a well-regarded Rochester litigator with "far more than 20 years of experience," observed that, "[i]n the Western District, $400-$500 per hour is generally deemed a reasonable hourly rate for experienced trial counsel," and noted explicitly its "aware[ness] of rising market rates in the [recent] years." *Id.* Similarly, in *Capax Discovery, Inc. v. AEP RSD Investors, LLC*, 2023 U.S. Dist. LEXIS 4403 (W.D.N.Y. 2023), decided two years ago, the Court stated that "[i]n the Western District, $400-$500 per hour is generally deemed a reasonable hourly rate for experienced trial counsel." *Id.*, at *6 (collecting cases); *accord New York v. Grand River, Enters. Six Nations, Ltd.*, 2021 U.S. Dist. LEXIS 206532, at *14 (W.D.N.Y. 2021) ("Within the Western District of New York, $500 is in-line with hourly rates for attorneys with [over 20 years of] experience"); *see generally Midwest Ath. & Sports All. LLC v. Xerox Corp.*, 2025 U.S. Dist. LEXIS 117671, at *10 (W.D.N.Y. 2025) (noting that the ostensibly "high-end" in-District rates requested by counsel of $350 for partners, $285 for counsel and associates, and $120 for paralegals is actually not on the higher-end, as "many cases in this District reflect approval of higher hourly rates").

These recent decisions all reflect the courts in this District's recognition that hourly rates must be "revised over time, as courts consistently recognize they

---

[1] According to the CPI Inflation Calculator, U.S. Dep't Lab., Bureau Lab. Stat., http://www.bls.gov/data/inflation_calculator.htm (last visited Sep. 9, 2025), an hourly rate of $560 in 2024 is equivalent to an hourly rate of $575.15 in 2025. In ruling on an attorney's fee application, the court can apply an inflationary factor in calculating the present value of hourly rates made in earlier cases. *See, e.g.*, *Harty v. Par Builders, Inc.*, 2016 U.S. Dist. LEXIS 18520, at *9 (S.D.N.Y. 2016) (using the CPI Inflation Calculator, the court determined that "an hourly rate of $250 in 2000 is equivalent to approximately $343.69 per hour in 2014, and an hourly rate of $390 in 2001 is equivalent to $521.33 per hour in 2014").

should," *Gulino*, 2024 U.S. Dist. LEXIS 105704, at *57, and demonstrate that SMR's requested rate of $525 for partners with over three-to-four decades of civil rights experience falls within the established range for this District.

In assessing a reasonable attorney's fee within the local community, Courts also can look to declarations from other attorneys regarding the reputation, skill, and experience of the attorney making the fee application. *See, e.g.*, *Barbour v. City of White Plains*, 788 F. Supp. 2d 216, 225 (S.D.N.Y. 2011) (court considered, *inter alia*, "declarations from other experienced civil rights litigators" regarding the reasonableness of the hourly rate requested by the plaintiff's lawyer); *Brady v. Wal-Mart Stores, Inc.*, 455 F. Supp. 2d 157, 207 (E.D.N.Y. 2006) (court considered, *inter alia*, declarations from other attorneys as to customary hourly rates as "empirical evidence of prevailing rates" for attorney's fees); *Paulino v. Upper West Side Parking Garage, Inc.*, 1999 U.S. Dist. LEXIS 7544, at *10–11 (S.D.N.Y. 1999) (affirmations from experienced plaintiffs' lawyers considered in determining prevailing market rate for attorney's fees); *cf. E.S. v. Katonah-Lewisboro Sch. Dist.*, 796 F. Supp. 2d 421, 429–30 (S.D.N.Y. 2011) ("Further complicating the task before the Court, Plaintiffs' counsel did not submit affidavits from local attorneys attesting to the reasonableness of their proposed fee").

Here, SMR has annexed to the Sivin Declaration, as **Exhibits 1-4**, declarations from respected attorneys who have practiced extensively in the area of civil rights litigation. The first declaration is from Gary M. Levine, former Acting Attorney General in Charge of the Rochester office of the New York State Office of

8

Attorney General, who has defended numerous civil rights lawsuits against New York State correction officers, including civil rights lawsuits brought by SMR and civil rights lawsuits before this Court. The next two declarations are from P. Jenny Marashi and Andrew Laufer, experienced plaintiffs' civil rights lawyers in the Southern District of New York. The fourth declaration is from Patrick Mantione, former Deputy Chief of Trials for the Queens County Office of the NYC Corporation Counsel, who has defended civil rights lawsuits against the City of New York and New York City police and correction officers, including lawsuits brought by SMR.

Based on the above factors, and utilizing the lodestar approach, SMR's request for an hourly rate of $525 is reasonable for work performed by Edward Sivin, Glenn Miller, and David Roche in this case. As set forth in the September 11, 2025 Sivin Declaration and supporting declarations from other civil rights litigators, Sivin, Miller, and Roche are highly experienced and skilled civil rights lawyers. They have been practicing law for 44 years, 42 years, and 30 years, respectively, and over that time period have successfully handled many hundreds of cases, both at the trial and appellate levels, involving allegations of civil rights violations by correction officers and police officers. Given their skill and experience, their request for an hourly rate of $525 is reasonable. SMR also requests an hourly rate of $475 for work performed by associate Clyde Rastetter, $175 for work performed by paralegal Jake Ethé, and $100 for paralegals Alexis Henryand Jason Miller, whose backgrounds and qualifications are summarized in the Sivin Declaration.

9

*Id.* at ¶¶ 14-24; *see Spring v. Allegany-Limestone Cent. Sch. Dist.*, 2024 U.S. Dist. LEXIS 103832, at \*8 (W.D.N.Y. 2024) (finding \$150 per hour to be reasonable for recent years).

In the case of Ethé, this higher rate is merited because his ability to produce work-product on par with junior attorneys helps SMR operate more efficiently. By handling assignments that typically are handled only by lawyers, Ethé's function at SMR economizes SMR's fee requests and would-be fees for potential paying clients. *See* Sivin Declaration ¶ 22. Thus, because his work entails a significantly greater degree of expertise than what even the Supreme Court has labelled "a gray area of tasks that might appropriately be performed either by an attorney or a paralegal," such as "factual investigation, including locating and interviewing witnesses; assistance with depositions, interrogatories, and document production; compilation of statistical and financial data; checking legal citations; and drafting correspondence," *Missouri v. Jenkins*, 491 U.S. 274, 288 n.10 (1989), Ethé's requested rate of \$175 per hour is reasonable. Finally, based on their background, experience, and expertise, *see* Sivin Declaration ¶¶ 23-24, an hourly rate of \$100 for Henry and J. Miller would be reasonable.

## III.    APPLICATION OF THE *JOHNSON* FACTORS

As set forth above, in addition to utilizing the lodestar approach, courts can consider the so-called *Johnson* factors to determine the reasonableness of any fee request. In the present case, Plaintiff urges the Court to afford special consideration to two of the *Johnson* factors: the "undesirability" of the case and "the amount

involved in the case and the results obtained." *See H.W.*, 2023 U.S. Dist. LEXIS 159849, at *3-4 (citing *Lochren v. Cnty. of Suffolk*, 344 Fed. App'x 706, 709 (2d Cir. 2009) (summary order) ("It is unnecessary to consider each of the *Johnson* factors individually.")).

### A. UNDESIRABILITY

The Sivin Declaration sets forth in detail the many factors that rendered this case "undesirable" from the standpoint of a lawyer considering whether to represent a client. Specifically, this case exemplifies the type of civil rights litigation that most attorneys would find economically and strategically undesirable.

First, Plaintiff presented as a convicted felon with significant mental health issues who had served a five-year sentence for criminal possession of a weapon. *See* Sivin Declaration ¶ 29. At the time of the alleged incidents, Plaintiff had an extensive, documented history of mental illness and had not taken his prescribed psychotropic medications *See id.* at ¶ 30. The limited DOCCS records available documented claims by the involved correction officers that both use-of-force incidents were provoked by Plaintiff's disregard of direct orders, and involved relatively benign acts of force undertaken to secure Plaintiff's compliance. *See id.*

Second, the evidentiary challenges were substantial. For the April 13, 2019 incident, Plaintiff acknowledged that he could not identify any of the officers who participated in the use of force, and was able only to identify one supervisor who was present. *See id.* The injuries alleged by Plaintiff as a result of the April 13 incident were arguably *de minimis* in nature, and the injuries sustained in the

11

April 15 incident were primarily limited to a nondisplaced ankle fracture which had since fully healed, leaving Plaintiff with minimal physical sequelae. *See id.*

Third, Plaintiff's post-release difficulties created ongoing litigation challenges almost unique to cases involving formerly incarcerated individuals. Due to difficulties adjusting to life "on the outside," Plaintiff was frequently unable to participate meaningfully in his own litigation. *See* Sivin Decl. ¶ 32. There were periods when SMR was unable to make contact with Plaintiff, and he was arrested and jailed in out-of-state facilities on at least two occasions after his release from DOCCS custody. *See id.* These challenges necessitated postponing the trial three times and required SMR to oppose two extensive and well-briefed motions to dismiss for failure to prosecute filed by Defendants. *See id.* Plaintiff was ultimately produced for trial only through a Writ of Habeas Corpus ad Testificandum issued by this Court. *See id.* Such client-management challenges are emblematic of the broader difficulties SMR faces in this area of practice, as evidenced by the fact that in just the two weeks before this motion was filed, SMR was scheduled to begin two other trials involving allegations of abuse against formerly incarcerated individuals by DOCCS officers, only to have the clients not appear for their own trials. *See* Sivin Declaration ¶¶ 33-35.

Fourth, the trial presentation was further complicated by the jury's awareness that Plaintiff was once again in law-enforcement custody during the proceedings, adding to the usual difficulty of persuading a jury to find in favor of a plaintiff who also had been incarcerated at the time of the underlying incident. *See* Sivin

12

Declaration ¶ 36. There also were no non-party witnesses who could corroborate Plaintiff's claims and refute the claims of the six correction officials who testified at trial. *See id.*

Fifth, beyond the usual risks associated with representing any client on a contingency basis, SMR was confronted with the additional risk that, were it to succeed in demonstrating to the trier of fact that Plaintiff was subject to excessive force by correction officers, the State of New York, which employed the officers, might not indemnify the officers for any judgment awarded against them. Indeed, in another successful lawsuit brought by SMR alleging a use of excessive force by Bare Hill correction officers, *see Tranchina v. McGrath*, 9:17-cv-01256 (N.D.N.Y. 2017), SMR secured a successful jury verdict awarding the plaintiff $240,000 in damages, then defended that verdict successfully to the Second Circuit, *see Tranchina v. McGrath*, 2022 U.S. App. LEXIS 33763 (2d Cir. 2022), then prevailed on a fee application, *see id.* at ECF No. 174, only to be informed by DOCCS that there would be no indemnification by the State. *See* **Exhibit 5** to Sivin Declaration (November 3, 2020 letter from DOCCS denying defendants' request for indemnification in *Tranchina*); Sivin Declaration ¶ 38.

The uncertainty of payment in cases like this is particularly acute given the jury's findings. The jury unanimously found that Plaintiff was subjected to excessive force by Killingbeck in violation of the Eighth Amendment, which necessarily means that the jury found Killingbeck's actions to be "sadistic and malicious," *see Baskerville v. Mulvaney*, 411 F.3d 45, 47-48 (2d Cir. 2005) (describing "malicious

and sadistic" element of Eighth Amendment excessive force claim), and the jury also found that Killingbeck's actions were sufficiently egregious to justify an award of punitive damages. *See* Sivin Declaration ¶ 38. Under these circumstances, payment of any portion of the judgment and/or attorney's fee is uncertain, as the State is far less likely to indemnify officers whose conduct has been found to be intentionally wrongful. *See Williams v. Marinelli*, 987 F.3d 188, 205 (2d Cir. 2021) (noting precedent that "employees who commit intentional torts, and are thereby subject to punitive damages, cannot seek indemnification from the State") (quoting *Brown v. Stone*, 66 F. Supp. 2d 412, 439 (E.D.N.Y. 1999)). Indeed, an order was issued in another case brought by SMR rejecting the defendant police officers' challenge to the City of New York's decision not to indemnify the officers for the monetary award made by the jury in favor of the plaintiff in that case. *See Ekupke v. City of New York*, 2017 U.S. Dist. LEXIS 210528 (S.D.N.Y., 2017), *aff'd* 823 F. App'x 25 (2d Cir. 2020). This uncertainty of payment is recognized as a legitimate factor supporting higher fee awards. *See Rachel B. v. Comm'r of Soc. Sec.*, 2025 U.S. Dist. LEXIS 80318, at *15 (W.D.N.Y. 2025) (discussing approved hourly rates in the Western District in excess of $1,000, and noting that "[t]he Court is also mindful that 'payment for an attorney in a social security case is inevitably uncertain'").

Finally, it bears note that SMR is not requesting rates comparable to those awarded to the firm in fee applications it made in the Southern District of New York. *See Stanbro*, 2024 U.S. Dist. LEXIS 50633, at *8 (awarding Sivin and Miller $700 per hour); *Magalios*, 2024 U.S. Dist. LEXIS 79743, at *5-6 (awarding Sivin

14

and Miller $650 per hour). SMR does not contend that the issues here were unique or sufficiently complex such that lawyers in the Western District, had they been willing to pursue this case, could not have obtained a similar result. *Cf. Parks v. Saltsman*, 2024 U.S. Dist. LEXIS 183959 (W.D.N.Y. 2024) (Geraci, J.) (awarding out-of-district rate of $650 to Andrew G. Celli, Jr. of the S.D.N.Y.-based civil rights firm Emery Celli Brinckerhoff Abady Ward & Maazel LLP since counsel's work product "would have substantially exceeded that of any local firm willing to take the case.") *Id.*, at *9. Still, while civil rights attorneys within the Western District might well be capable of successfully litigating claims like the instant one, it is far from clear that Plaintiff would have been able to secure any in-district counsel, or indeed any legal representation other than SMR, given the undesirability of this case. Over the years, SMR has been willing to represent incarcerated or formerly incarcerated individuals in lawsuits that most lawyers would consider undesirable from a financial standpoint. *See* Sivin Declaration ¶¶ 4-5.

That the instant lawsuit falls squarely within the "undesirability of the case" factor set forth in *Johnson* is perhaps best demonstrated by defense counsel's own acknowledgment in Defendants' motion for a remittitur that, but for the fee shifting provisions of 42 U.S.C. § 1988, no lawyer in his right mind would have gone to the time and expense of litigating this type of case, much less trying the case to verdict. *See* Sivin Declaration ¶ 37 (citing ECF No. 127-3 at 5).

## B. THE AMOUNT INVOLVED IN THE CASE AND THE RESULTS OBTAINED

Here, SMR obtained what can only be characterized as an excellent result of Plaintiff's lawsuit. The Sivin Affirmation summarizes the multiple challenges confronted by SMR in the litigation of this case. Despite those challenges, SMR obtained the result sought by Plaintiff—a judicial determination that a correction officer violated Plaintiff's Eighth Amendment rights by using excessive force against him, an award of damages to compensate him for the resulting pain and suffering, and an additional award of punitive damages as a pronouncement that Killingbeck's actions were egregious in nature. By all measures, this was a complete success in favor of Plaintiff. Indeed, in assessing the degree of Plaintiff's success in this case, this Court can, and should, consider the assertion in Defendant's post-trial motion for a remittitur that the monetary award made to Plaintiff "shocks the conscience." ECF No. 127-3 at 5.

## IV.    SUMMARY OF HOURS REQUESTED

As documented in the Sivin Declaration and the exhibits annexed thereto, Edward Sivin spent a minimum of 72.2 hours in the litigation of this lawsuit (15.8 of which were spent in connection with this fee application), Glenn Miller spent a minimum of 31.1 hours litigating the lawsuit, and David Roche spent a minimum of 191.4 non-travel hours and 16.5 travel hours[2] litigating the lawsuit for a

---

[2] "The general rule for courts within the Second Circuit is to compensate travel time 'at half the usual hourly rate.'" *Montanez v. City of Syracuse*, 2020 U.S. Dist. LEXIS 157224, at \*16 (N.D.N.Y. 2020) (citing *Critchlow v. First Unum Life Ins. Co. of Am.*, 377 F. Supp. 2d 337, 343 n.1 (W.D.N.Y. 2005)).

16

combined total of 282.5 non-travel hours and 16.5 travel hours.[3] Applying an hourly rate of $525, the fee requested for their collective work is $159,048.75. Clyde Rastetter spent a minimum of 113.22 hours litigating the lawsuit. Applying an hourly rate of $475, the fee requested for Rastetter's work is $53,779.50. Paralegal Jake Ethé spent a minimum of 56.51 hours assisting in the litigation of this lawsuit (7.61 of which were spent in connection with this fee application). Applying an hourly rate of $175, the fee requested for Ethé's work is $9,889.25. Paralegals Alexis Henry and Jason Miller spent a minimum of 36.8 non-travel hours and 14 travel hours and 9.8 hours, respectively, assisting in the litigation of this lawsuit. Applying an hourly rate of $100, the fee requested for Henry and J. Miller is $5,360.

## V.  THE COURT SHOULD AWARD SMR ITS FULL LITIGATION EXPENSES

"Attorney's fees awards include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998) (citation omitted). The Second Circuit has held that these costs include, but are not limited to, "photocopying, travel, telephone costs, [] postage[,]" and "online legal research expenses." *Deferio v. City of Syracuse*, 2018 U.S. Dist. LEXIS 103596, at *26-27 (N.D.N.Y. 2018) (citing *LeBlanc-Sternberg*, 143 F.3d at 763); *see Kuzma v. Internal Revenue Serv.*, 821 F.2d 930, 933-34 (2d Cir. 1987) ("Identifiable, out-of-pocket disbursements for items

---

[3] It is well established that hours spent in an attorney's fee application pursuant to 42 U.S.C. § 1988 can be included in the fee award. *See Weyant v. Okst*, 198 F.3d 311, 316 (2d Cir. 1999).

such as photocopying, travel, and telephone costs are generally taxable under § 1988 and are often distinguished from nonrecoverable routine office overhead, which must normally be absorbed within the attorney's hourly rate.").

The litigation expenses for which SMR seeks reimbursement in this case total $7,411, as itemized and explained in the Declaration of Edward Sivin and the exhibits annexed thereto.[4]

## CONCLUSION

Based on the foregoing, Plaintiff respectfully requests that the within motion be granted in its entirety, and that an order be made and entered pursuant to 42 U.S.C. § 1988 for an award of attorney's fees in the amount of $228,077.50 and reimbursement of litigation expenses in the amount of $7,411 together with such other and further relief as is just, proper, and equitable.

Dated: New York, New York
      September 11, 2025

*s/ Edward Sivin*
Edward Sivin
Sivin, Miller & Roche LLP
Attorneys for Plaintiff
20 Vesey Street, Suite 1400
New York, NY 10007
Telephone: (212) 349-0300
E-mail: esivin@sivinandmiller.com

---

[4] Although expenses for photocopying and ordinary postage are chargeable in a § 1988 fee application, *see Aston v. Secretary of Health and Human Services*, 808 F.2d 9, 12 (2d Cir. 1986), SMR does not keep track of those expenses. Accordingly, reimbursement is not being sought for postage and photocopies.